**MUCKLEROY LUNT, LLC**
MARTIN A. MUCKLEROY, ESQ.
Nevada Bar No.: 009634
6077 S. Fort Apache Rd., Ste. 140
Las Vegas, NV 89148
Phone: (702) 907-0097
Fax: (702) 938-4065
martin@muckleroylunt.com

*Attorneys for Plaintiff Daniel Durkee*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL DURKEE, on Behalf of Himself and All Others Similarly Situated, | Case No. |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| OMEGA PROTEIN CORPORATION, GARY R. GOODWIN, BRET D. SCHOLTES, STEPHEN C. BRYAN, MICHAEL N. CHRISTODOLOU, CELESTE A. CLARK, DAVID H. CLARKE, DAVID OWEN, and DAVID W. WEHLMANN, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Daniel Durkee ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Class Action Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Omega Protein Corporation ("Omega" or the  "Company") against Omega and the members of Omega's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9 and to enjoin the vote on a proposed transaction, pursuant to which Omega will be acquired by Cooke Inc. ("Parent"), through its wholly-owned subsidiary Alpha  MergerSub, Inc. ("Merger Sub," and together with Parent, "Cooke") (the "Proposed Transaction").

2.      On October 6, 2017, Omega and Cooke issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated October 5, 2017 (the "Merger Agreement") to sell Omega to Cooke for $22.00 per share in cash (the "Merger Consideration"). Pursuant to the Merger Agreement, Merger Sub will merge with and into the Company, with the Company surviving the merger as an indirect wholly owned subsidiary of Parent.  The Proposed Transaction is valued at approximately $500 million.

3.      On October 30, 2017, Omega filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.  The Proxy Statement, which recommends that Omega stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things:  (i) Omega's financial projections, relied upon by Omega's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by J.P. Morgan; and (iii) the background process leading to the Proposed Transaction.  The failure to adequately disclose such

material information constitutes a violation of the above-referenced sections of the Exchange Act, as Omega stockholders need such information to cast a fully-informed vote in connection with the Proposed Transaction.

4.  In short, unless remedied, Omega's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.  In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**JURISDICTION AND VENUE**

5.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.  This Court has jurisdiction over the Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, most of the documents are electronically stored, and the evidence exists.  Moreover, Omega is incorporated in this District, and each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

3

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Omega.

9.      Defendant Omega is a Nevada corporation with its principal executive offices located at 2105 City West Boulevard, Suite 500, Houston, Texas 77042.  Omega produces animal and human nutrition products derived from fish, as well as plants and dairy sources.  The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "OME."

10.      Defendant Gary R. Goodwin ("Goodwin") has served as a director of Omega since November 2006 and as Chairman of the Board of Omega since February 2013.

11.      Defendant Bret D. Scholtes ("Scholtes") has served as President and Chief Executive Officer ("CEO") of Omega since January 2012 and as a director of Omega since February  2013.

12.      Defendant Stephen C. Bryan ("Bryan") has served as a director of Omega since June  2014.

13.      Defendant Michael N. Christodolou ("Christodolou") has served as a director of Omega since June 2016.

14.      Defendant Dr. Celeste A. Clark ("Clark") has served as a director of  Omega since June 2017.

15.      Defendant David H. Clarke ("Clarke") has served as a director of  Omega since June 2016.

16.      Defendant David A. Owen ("Owen") has served as a director of Omega since February  2010.

4

17.     Defendant David W. Wehlmann ("Wehlmann") has served as a director of Omega since April 2012.

18.     Defendants Goodwin, Scholtes, Bryan, Christodolou, Clark, Clarke, Owen, and Wehlmann are collectively referred to herein as the "Board" or the "Individual Defendants" and, together with Omega, "Defendants."

**OTHER RELEVANT ENTITIES**

19.     Parent is a corporation incorporated under the laws of the Province of New Brunswick, Canada, and is a party to the Merger Agreement.

20.     Defendant Merger Sub is a Nevada corporation, an indirect, wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

**CLASS ACTION ALLEGATIONS**

21.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Omega common stock (the "Class").  Excluded from the Class are Defendants, their affiliates, immediate families, legal representatives, heirs, successors, assigns, and any entity in which Defendants have or had a controlling interest.

22.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

23.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of November 2, 2017, there were approximately 22,478,928 shares of Company common stock issued and outstanding held by individuals and entities who are geographically dispersed.  All members of the Class may be identified from records maintained by Omega or its transfer agent

and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

24.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

25.     Plaintiff will fairly and adequately protect the interests of the Class and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background

28.     Omega was founded in 1913 as a commercial fishing operation and now develops, produces, and delivers nutrition products throughout the world to improve the

nutritional integrity of food, dietary supplements, and animal feed.  The Company operates in two divisions:  animal nutrition and human nutrition.

29.      The animal nutrition division produces animal nutrition products, including fish meal products that are primarily used as a protein ingredient in animal feed for swine, aquaculture, and household pets.  This segment also offers fish oil for animal and aquaculture feeds and as additives to human food products and dietary supplements, and fish solubles to bait manufacturers and organic fertilizer, and as an additive in fish meal.  In 2016, the animal nutrition segment brought in $262.5 million in revenue.

30.      The human nutrition business operates under the name Bioriginal and provides nutritional ingredients to the food and nutraceutical industries.  Bioriginal is comprised primarily of three subsidiaries:  Bioriginal Food & Science Corp. ("Bioriginal Food & Science"), Wisconsin Specialty Protein, L.L.C. ("WSP"), and Cyvex Nutrition, Inc. ("Cyvex").  Its products include plant and marine-based oils, seeds and grains, protein products, and botanical ingredients.  In 2016, the human nutrition segment brought in $128.2 million in revenue.

**The Sale Process**

31.      In August 2015, the Board initiated a strategic review ("Initial Strategic Review") to explore several options to add stockholder value, including:  (1) continuing the current business strategy and pursuing growth opportunities; (2) a share repurchase program; (3) a sale, spin-off, or other separation of a selected business or businesses; (4) a merger or other form of business combination involving the entire company; or (5) a strategic acquisition.

32.      In September 2015, Omega engaged J.P. Morgan as its financial advisor for the Initial Strategic Review, and contact was made with 29 parties interested in a potential transaction. The Company ultimately signed 16 confidentiality agreements with potential strategic partners.

33.     While the Initial Strategic Review resulted in at least two bids for the Company, one valued at $16 per share and the other valued at $19 per share, in May 2016, the Board determined that neither created enough value, and, instead, authorized a share repurchase program.

34.     Also in August 2015, Wynnefield Capital Inc. and its affiliates ("Wynnefield"), an activist stockholder invested in the Company, began publicly voicing its disapproval of Omega branching into human nutrition and sent a letter demanding that the Board sell the Company to unlock value for the stockholders.

35.     Wynnefield published several more letters demanding, among other things, that the Board take action on the human nutrition business segment or the strategic alternative review process and threatened a proxy fight if the Board did not comply.

36.     On May 20, 2016, Wynnefield did in fact file a preliminary proxy with two Board nominees, defendants Clarke and Christodolou, who were elected to the Board on June 28. 2016.

37.     Shortly thereafter, in August 2016, the Board formed the "Human Nutrition Task Force" to consider strategic alternatives for the human nutrition segment.  The Human Nutrition Task Force considered three alternatives:  (1) maintain the human nutrition business; (2) restructure the human nutrition business; or (3) divest the human nutrition business.

38.     In early 2017, Omega engaged J.P. Morgan and BMO Capital Markets Corp. ("BMO") in connection with its review of strategic alternatives for the human nutrition business and an evaluation of its current operating plan ("2017 Strategic Review") for the potential disposition of its human nutrition segment.  The 2017 Strategic Review resulted in the receipt of 12 preliminary offers for the disposition of Bioriginal Food & Science and Cyvex, and 6 indications of interest for the acquisition of WSP.  Ultimately, one bidder remained under

consideration in each sales process, but the Proxy Statement fails to disclose the final proposed terms of the offers to acquire the Company's subsidiaries.

39.     In April 2017, two companies, Potential Buyer B and Cooke, expressed interest in a potential transaction involving the entirety of Omega's business, and Omega entered into confidentiality agreements with both potential buyers.  Potential Buyer B had been approached during the Initial Strategic Review, but Omega did not approach any other potential buyers in connection with the 2017 Strategic Review.

40.     On April 28, 2017, Cooke sent a letter of interest in acquiring the Company for $24 per share and requested a 60-day exclusivity period.

41.     On April 29, 2017, the Board engaged J.P. Morgan as its financial advisor in connection with a potential transaction involving the entire Company.

42.     On May 21, 2017, the Board granted a 28-day exclusivity period to Cooke which provided for a 9-day extension if, prior to the expiration of the exclusivity period, Cooke reaffirmed the $24 per share purchase price.  Cooke did this on June 19, 2017, thereby extending the exclusivity period to June 28, 2017.

43.     On May 22, 2017, defendant Scholtes received an unsolicited call from Potential Buyer C regarding a potential acquisition of Omega.  However, Potential Buyer C never submitted a formal indication of interest, and the Company did not share any confidential information with Potential Buyer C.

44.     A few days after the exclusivity period expired on June 28, 2017, Cooke sent Omega a revised proposal which reduced the purchase price to $22 per share.

45.     Despite previously determining that the Board would not be willing to approve a transaction at less than $24 per share, at an August 10, 2017 Board meeting, the Board determined that "the potential transaction could be viewed as attractive at $22 per share."

46.     After negotiating the terms of the merger agreement, at its Board meeting on September 24 and 25, 2017, the Board agreed to make a counteroffer to Cooke of $23.25 per share.  This counteroffer was delivered to Cooke on September 27, 2017.

47.     On October 2, 2017, Cooke sent a revised merger agreement to Omega which reiterated its $22 per share offer and did not respond to Omega's proposal to increase the merger consideration to $23.25.  On October 4, 2017, Cooke indicated that $22 per share was the highest price it would pay to acquire the Company.

48.     At the October 5, 2017 Board meeting, J.P. Morgan delivered its oral opinion, which was confirmed in a written opinion later that day, on the fairness of the transaction from a financial standpoint, and the Board approved the Merger Agreement.

**The Proposed Transaction**

49.     On October 6, 2017, Omega and Cooke issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**SAINT JOHN, New Brunswick and HOUSTON, Oct. 6, 2017 /PRNewswire/ -** - Cooke Inc. ("Cooke"), a New Brunswick company and parent of Cooke Aquaculture Inc., and Omega Protein Corporation ("Omega Protein" or the "Company"), a nutritional product company and a leading integrated provider of specialty oils and specialty protein products, today announced that they have entered into a definitive agreement (the "Merger Agreement") under which Cooke will acquire all outstanding shares of Omega Protein for $22.00 per share in cash. The transaction price represents a premium of 32.5% to Omega Protein's closing share price on October 5, 2017.  The Merger Agreement has been unanimously approved by the Board of Directors of each of Omega Protein and Cooke.

"We are very pleased to sign this agreement with Omega Protein," said Glenn Cooke, CEO of Cooke Inc.  "Omega Protein will provide us with another platform in Cooke's growth strategy through further diversification in the supply side of the business.  We believe this will be a very good fit between our two

cultures. Omega Protein has a 100-year history with an experienced and dedicated workforce, which we value, and a tradition of operating in small, coastal towns and communities that we share. Their focus on sustainable aquaculture and agriculture and the production of healthy food is also a great fit with our experience and culture."

Cooke carries on the business of finfish aquaculture globally through its wholly-owned subsidiary Cooke Aquaculture Inc. The New Brunswick, Canada based Cooke family also has significant investments in wild fisheries globally through their ownership of Cooke Seafood USA, Inc. and Icicle Seafoods, Inc. Cooke Aquaculture Inc. is an aquaculture corporation founded in Blacks Harbour, New Brunswick, Canada with salmon farming operations in Atlantic Canada (operated by its affiliate, Kelly Cove Salmon Ltd.), the United States (Maine and Washington), Chile and Scotland, as well as seabass and seabream farming operations in Spain. In 2015, Cooke Seafood USA, Inc. was created, and grew rapidly through the acquisitions of Wanchese Fish Company, Inc. in the USA and the assets of Fripur S.A., the largest fishing company in Uruguay. The Cooke family also acquired Icicle Seafoods, Inc. in 2016. The addition of Omega Protein serves as a perfect strategic piece for the Cooke family of companies.

"We are excited about the agreement, which we believe recognizes the value of Omega Protein's successful, 100-year-old fishing business and also provides stockholders with an immediate premium," said Bret Scholtes, President and CEO of Omega Protein. "Cooke is a family owned company and in many ways, reminds us a lot of ourselves and this agreement is the perfect fit for the two companies. Cooke is a highly-regarded and responsible leader in the global fishing and seafood industry."

**Insiders' Interests in the Proposed Transaction**

50.     Omega insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Omega's public stockholders.

51.     Company insiders stand to reap substantial financial benefits for securing the deal with Cooke. Pursuant to the Merger Agreement, Company stock options, restricted stock, and performance units that have been awarded to Omega's executive officers and directors will immediately vest and be converted into the right to receive cash payments. The following table summarizes the cash payments the executive officers stand to receive in connection with their

vested and unvested equity awards in connection with the Proposed Transaction, totaling over $10.8 million:

| Name | Total Option Consideration | Total Restricted Stock Consideration | Total Performance Unit Consideration | Total |
|---|---|---|---|---|
| **Non-Employee Directors:** | | | | |
| David A. Owen | 240,600 | 74,228 | -- | **314,828** |
| David H. Clark | -- | 74,228 | -- | **74,228** |
| David W. Wehlmann | 357,192 | 74,228 | -- | **431,420** |
| Gary R. Goodwin | 240,600 | 74,228 | -- | **314,828** |
| Michael N. Christodolou | -- | 74,228 | -- | **74,228** |
| Stephen C. Bryan | -- | 74,228 | -- | **74,228** |
| Dr. Celeste Clark | -- | 74,228 | -- | **74,228** |
| **Executive Officers:** | | | | |
| Bret D. Scholtes | 4,547,000 | 697,554 | 989,450 | **6,234,004** |
| Dr. Mark E. Griffin | -- | 291,368 | 414,267 | **705,635** |
| John D. Held | -- | 291,368 | 414,267 | **705,635** |
| Joseph R. Vidal | -- | 172,546 | 280,786 | **453,332** |
| Andrew C. Johannesen | -- | 300,784 | 425,827 | **726,611** |
| Mark A. Livingston | -- | 88,704 | 77,067 | **165,771** |
| Montgomery C. Deihl | -- | 198,506 | 271,500 | **470,006** |

52. Moreover, if they are terminated in connection with the Proposed Transaction, Omega's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation. The following table sets forth the golden parachute compensation the Company's named executive officers stand to receive:

| Name | Cash | Equity | Tax Reimbursement | Total |
|---|---|---|---|---|
| Bret D. Scholtes | $2,270,782 | $5,244,554 | – | $7,515,336 |
| Andrew C. Johannesen | $1,105,245 | $300,784 | – | $1,406,029 |
| John D. Held | $5,134,106 | $291,368 | $1,770,769 | $7,196,243 |
| Dr. Mark E. Griffin | $1,064,131 | $291,368 | – | $1,355,769 |
| Montgomery C. Deihl | $891,146 | $198,506 | – | $1,089,652 |

**The Proxy Statement Contains Material Misstatements or Omissions**

53.     The Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Omega's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision on the Proposed Transaction.

54.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning:  (i) Omega's financial projections, relied upon by Omega's financial advisor, J.P. Morgan; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by J.P. Morgan; and (iii) the background process leading to the Proposed Transaction.  Accordingly, Omega stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Omega's Financial Projections*

55.     The Proxy Statement fails to disclose material information relating to the financial projections provided by Omega's management and relied upon by J.P. Morgan for its analyses. Although the Proxy Statement discloses certain of the Company's financial  projections, it fails to disclose certain of the projections that J.P. Morgan actually used and relied  upon in its valuation  analyses  to  support  its  opinion  that  the  merger  consideration  is  fair  to  the Company's stockholders.

13

56.     First, in performing its *Discounted Cash Flow Analysis*, J.P.  Morgan used the Company's projected unlevered free cash flows for years 2017 through 2026.  However, the Proxy Statement fails to disclose the unlevered free cash  flows for years 2017 through 2026 that were used by J.P. Morgan in its analysis, as well as the  line item projections used to calculate those unlevered free cash flows, including EBITDA, taxes, capital expenditures, and increases in net working capital.

57.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

***Material Omissions Concerning J.P. Morgan's Financial Analyses***

58.     The Proxy Statement describes J.P. Morgan's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Omega's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in making their voting decision with respect to the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Omega's stockholders.

59.     For example, with respect to J.P Morgan's *Public Trading Multiples*, the Proxy Statement fails to disclose the individual 2017 firm value ("FV")/EBITDA and 2018

FV/EBITDA multiples for each of the selected publicly traded companies analyzed by J.P. Morgan as well as any other financial metrics observed for each company. Without this information, stockholders cannot assess the reliability of J.P. Morgan's analysis and determine the comparability or appropriateness of using each of the selected companies in the analysis.

60. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) the estimates of unlevered free cash flow for the Company for the fiscal years 2017 through 2026; (b) the terminal year estimate of the free cash flow to be generated by the Company; (c) the inputs used to derive the range of discount rates of 7.5% to 8.5%; and (d) the implied terminal value multiples resulting from the analysis.

61. With respect to J.P. Morgan's *Selected Transaction Analysis*, similarly to the *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the individual transaction value to last twelve months EBITDA multiples for each of the selected publicly transactions analyzed by J.P. Morgan as well as any other financial metrics observed for each of the target companies. Without this information, stockholders cannot assess the reliability of J.P. Morgan's analysis and determine the comparability or appropriateness of using each of the selected transactions in the analysis.

62. Without such undisclosed information, Omega stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's opinion and analyses should factor into their voting decision with respect to the Proposed Transaction.

*Material Omissions Concerning the Flawed Process*

63.     The Proxy Statement also fails to disclose or misstates material information relating to the background process leading up to the Proposed Transaction, including:

(a)     The terms of the numerous confidentiality agreements the Company entered into with potential strategic partners throughout the sales process from 2015 through 2017 and whether any of the confidentiality agreements contain a standstill and/or "don't ask, don't waive" provision that are or were preventing those counterparties from submitting superior offers to acquire the Company;

(b)     Despite Wynnefield's public campaign to pressure the Company into a strategic transaction, the Proxy Statement does not mention any communication between Wynnefield and the Board or the Individual Defendants or the proxy fight that resulted in two Wynnefield nominees on the Board;

(c)     Which Board members were named to the "Human Nutrition Task Force" in August 2016;

(d)     Why the Board did not instruct J.P. Morgan to contact any of the potential buyers that had been contacted during the Initial Strategic Review;

(e)     The nature of the relationship between Cooke and Omega, the length of the relationship, and the impact Cooke being a customer had on Omega's finances;

(f)     Whether the Board instructed the Company's executives to ask for a higher price from Cooke between August 10, 2017 and September 26, 2017;

(g)     When the Board learned that BMO, the investment banking firm advising the Board in connection with a potential sale of WSP, would be partially financing the Proposed Transaction for Cooke, and what action was taken after learning this; and

(h)   The final proposed terms of the offers to acquire the Company's subsidiaries, Bioriginal Food & Science, Cyvex, and WSP.

64.   In addition, the Proxy Statement also omits material information regarding potential conflicts of interest with the Company's insiders.  As noted above, certain officers and directors stand to receive benefits from the Proposed Transaction that the Company's public stockholders are not entitled to.

65.   Specifically, the Proxy Statement discloses that the Company amended its employment agreements with each of the executives other than John Held and Joseph Vidal in connection with the Proposed Transaction to add "constructive termination" as a termination event that would trigger severance benefits.  The Proxy Statement indicates that the Board's compensation committee discussed various compensation-related issues, including adding a constructive termination provision to employee contracts in connection with the Proposed Transaction.

66.   However, the Proxy Statement fails to disclose sufficient information relating to the timing and nature of these discussions, including but not limited to, who proposed the constructive termination amendments and who negotiated and participated in such conversations. Communications regarding amended employment agreements, that provide for lucrative payments, during the negotiation of the underlying transaction must be disclosed to stockholders because this information is necessary for stockholders to understand potential conflicts of interest of management and the Board that may have motivated such individuals to act in their own self-interest rather than in the best interests of the Company's public stockholders.

67.   Defendants' failure to provide Omega stockholders with the foregoing material information renders the statements in the "Background of the Merger," "Reasons for the Merger

and the Recommendation of the Omega Board," "Opinion of Omega's Financial Advisor Regarding the Merger Consideration," "Unaudited Financial Projections of Omega," and "Interests of Omega's Executive Officers and Directors in the Merger" sections of the Proxy Statement false and/or materially misleading and constitutes a violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

68.    Plaintiff repeats all previous allegations as if set forth in full.

69.    During the relevant period, Defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

70.    By virtue of their positions within the Company, Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by Defendants.  It misrepresented and/or omitted material facts, including material information about the sales process for the Company,

the financial analyses performed by the Company's financial advisor, and the actual intrinsic standalone value of the Company.  Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

71.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

72.     By reason of the foregoing, the Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

73.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

<u>**COUNT II**</u>

**Against the Individual Defendants for**
**Violations of Section 20(a) of the Exchange Act**

74.     Plaintiff repeats all previous allegations as if set forth in full.

75.     The Individual Defendants acted as controlling persons of Omega within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Omega, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

76.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

19

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

78.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered – descriptions the Company directors had input into.

79.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

80.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' conduct, Omega's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and in favor of the Class, and against Defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Omega stockholders;

C.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

///

///

///

///

///

///

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  November 13, 2017

**MUCKLEROY LUNT, LLC**

By  */s/ Martin A. Muckleroy*
    Martin A Muckleroy
    6077 S. Fort Apache Rd., Suite 140
    Las Vegas, NV 89148
    Telephone:  (702) 907-0097
    Facsimile:  (702) 938-4065
    Email:  martin@muckleroylunt.com
    *Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone:  (212) 308-5858
Facsimile:  (212) 214-0506
Email:  fortunato@bespc.com

**WEISSLAW LLP**
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone:  (212) 682-3025
Facsimile:  (212) 682-3010
Email:  racocelli@weisslawllp.com

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, the undersigned Daniel Durkee, certify that:

1.      I have reviewed the complaint against Omega Protein Corporation ("Omega") and others and have authorized its filing on my behalf.

2.      I did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      I hold 20 shares of Omega Protein Corporation (NYSE: OME) stock as of the date of this certification and have been a holder of Omega stock at all relevant times.

5.      I have not sought to serve or served as a class representative under the federal securities laws in the last three years.

6.      I will not accept any payment for serving as a representative party beyond the undersigned's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.


Dated: November 10, 2017

Daniel Durkee (Nov 10, 2017)

Daniel Durkee